**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR. NO. 19-172 (TFH/RM)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANTHONY M. REID,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(A) and 18 U.S.C. § 3142 (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On January 30, 2012, the defendant joined the United States Marine Corps.   On June 4, 2016, the defendant was charged with an Article 120(d), Abusive Sexual Contact, in violation of the Uniformed Code of Military Justice ("UCMJ"), for allegedly sexually assaulting a female Marine.   On May 19, 2017, at a Special Court Martial and pursuant to a Pre-trial Agreement, the defendant pled guilty to an Article 128 violation, Assault by Battery, in violation of the UCMJ. As a result, the defendant received a Bad Conduct Discharge, was ordered to forfeit $1066 for 3 months, and was sentenced to confinement for 90 days.

On or about January 28, 2019, the defendant called the complaining witness at her place of employment, the Navy-Marine Corps Appellate Division of the Office of the Judge Advocate General, U.S. Navy, at the Navy Yard in Washington, D.C.   The defendant called regarding his criminal appeal.   During that telephone conversation, the defendant identified himself as Anthony Reid and spoke with the complaining witness about his appeal.   That same day, the defendant called back the complaining witness, said that he was going to file a complaint with the Inspector General, and would "bring down the system."   The complaining witness referred the defendant to a Lieutenant Commander for further assistance.

On May 6, 2019, the defendant called the complaining witness multiple times at her job. The defendant called from telephone number (518) 528-4264.   During the first telephone conversation, the defendant was furious and said that he was framed (referring to his conviction). The complaining witness tried to calm down the defendant but was unable to do so.   The defendant wanted the Secretary of the Navy's contact information and was angry that the complaining witness did not have it readily available to provide.   Ultimately, the complaining witness hung up on the defendant because she could not have a productive conversation with him. That telephone conversation was not recorded.

During the second telephone conversation that same day, the defendant was cursing and yelling at the complaining witness and told her "I am coming after you" and "you are going to pay for what you did."   The defendant also said that the first law enforcement officer to come into contact with him will be a martyr.   That telephone conversation was not recorded.   Thereafter, that same day the defendant called the complaining witness at least four more times.   The complaining witness did not answer those telephone calls because she recognized the telephone

number that the defendant had used to call her earlier that day.

Also on May 6, 2019, the defendant left a voice mail message on the complaining witness's work telephone.   Law enforcement obtained a copy of that voice mail message.   Before the message is played, the recording states "voice call from extension 518-528-4264."   During that voice mail message, a male voice said, "I'm waiting for you to report me [sic] go ahead, go ahead and report those threats that I communicated because I have some that were communicated to me that I would like people to know about."   The male also said that he had already posted the emails on line.

Also on May 6, 2019, the defendant sent several emails to the complaining witness's work email address. For all of the defendant's emails, his name "Anthony Reid" and email address "amreid21@hotmail.com" were included in the "From" category.   On May 6, 2019, at approximately 10:23 a.m., the defendant sent the following email to the complaining witness:

> Your bosses' professional POC, give it to me now!   And you also need to tell me who their boss is and that person's so when I figure out that you're just stalling, I can move on to the next law breaking terrorist rogue commander.
>
> Additionally, you need to be working around the clock to find out how I'm going to report you to SECNAV.
>
> Best Regards
>
> A.M. Reid

At Approximately 10:39 a.m. that same morning, the complaining witness sent a reply email to the defendant stating that she had copied her supervisor and stated his name.   Later that same morning at approximately 10:51 a.m., the defendant sent an email to the complaining witness that stated:

You made so many excuses for why Jacque has such a delay in communication but you don't have any excuses so why am I still waiting for your bullshit reply?   Also could you go ahead a forward your complaints to the appropriate authority.   You did communicate to me on the phone that you feel threatened by me. And you should.

You have served beyond your usefulness lol.

A.M. Reid

At approximately 11:37 a.m. that same day, the defendant sent the following email to the complaining witness:

Lol another Colonel huh?   You people seem to have trouble reaching someone who wears stars.   I don't care about Col. [name redacted].   But give me his bosses' poc tho.   No 0-6 could ever be the final over all approval authority.

I'm learning a lot about corruption from you.   Anytime I am referred to someone lower than a General then I won't accept what is being said at face value.   I'm sure there are generals in your office which I why you people are off the meter right now with this bullshit you are currently on.

I hope you get hit by a car on your way home today. I hope you don't make it. Lol. I hope you rip your pants when you sit down. I hope someone puts a thumb tack in that same chair. I hope you spill hot coffee on yourself. I hope you do your job with integrity and honesty. I hope you believe in the navy's core values. I hope you believe in the U.S. Constitution. I hope you have faith in the justice system. I hope you believe in fairness and equality. I hope you know you suck. I hope you step in dog shit. I hope someone rings your doorbell and run. I hope your next delivery from amazon comes a day late. I hope you get trapped in a corner with an angry feral cat. Avoid zoos too, because I hope you fall into a gorilla enclosure and get fucked up, that shit would be funny AF my guy. I hope these emails get you all fired. I hope you suffer worse than i have. I hope you'll find this funny someday. I hope you don't take this seriously like you don't take your responsibilities and obligations seriously.

I hope you have a nice day.

> And I also hope someone fucks it up lol.
>
> Best Regards
> A.M. Reid

At approximately 12:37 p.m. that day, the defendant sent an email to the complaining witness that contained a screenshot of the internet home page of the U.S. Navy Judge Advocate General's Corps.   Circled in red was the division where the complaining witness works.   Also on that home page were the mailing address and telephone numbers for the complaining witness's employer.   We believe that the defendant was informing the complaining witness that he knew where she worked.   That same afternoon at approximately 1:25 p.m., the defendant sent another email to the complaining witness that included the following statements:

> No reply?  What's wrong?  Did I say something that hurted your tiny feelings?  Lol I've decided that you're going to be contacted by me for the rest of your natural existence lol.   This is fun to me. Since I can go to college or work, I will bother you instead college girl.
>
> So how do you feel about my language now?   Is it threatening yet? Do you feel threatened by me?  Are you feeling unsafe lol?  Do you feel secure in your little standard issue office?
>
> I don't feel safe at all.   I feel very threatened by your action and or lack of.   I don't feel secure anywhere.   So you better pick up your phone every day that why I can feel somewhat safe knowing that you are not in New York.
>
> Lmfao "threatening language"
>
> You're a big pussy lol. A real genuine coward.   I'm glad this is going to your .mil account.   You can look at this.

The defendant then included an email dated September 7, 2016, that he had sent to another person in the Marine Corps.   That email was from "Reid LCpl Anthony M <anthony.reid@usmc.mil>". In that September 7, 2016, email the defendant identified himself as "Pvt Reid," he discussed a

general court marshal, and that he was told that he was going back to Okinawa for what he thought

may be another scheduled Article 32.   The defendant further stated in the September 7, 2016,

email that he was resending the email from his "personal," which was a reference to his personal

email account.   Also, the Cc: category listed the email address "amreid21@hotmail.com" - the

same email account from which the defendant was sending emails to the complaining witness.

Later that same afternoon, at approximately 4:53 p.m., the defendant sent another email to

the complaining witness that stated in relevant part,

> How's life? Do you like being able to breathe? Do you like being
> able to live? Do you like not being fucked with?   Do you guys hug
> your family after a long day of being a scumbag?   I don't hug my
> family.   They all left me because they believe in. . . .
>
> *   *   *   *
>
> I hope you all have people counting on your ability to be employed
> and live a healthy life. I'm going to fuck that all up lmao! You all
> better act fast because I promise you that this will not be an issue in
> my life before 2020 gets here. Not fucking around. One way or
> another, I will eliminate you all from my life this could have been
> handled at the Lowe's level.   My CO could have disposed of those
> charges is he had done his job.   So fuck y'all.   Please report my
> "threatening language" like you said you were.   But not to another
> one of your but-buddies.   Report me to the next highest authority.
>
> So let's see. Hmm after JAG of the navy there is ummm. . . . oh
> SECNAV.
>
> You people are basically terrorist, you understand that?   This is
> terrorism.   Your actions destabilize Government continuity and
> efficiency.   And you wear the same uniform as I, that make you all
> an inside threat.
>
> A.M. Reid

In one of the emails that the defendant had sent to the complaining witness, he included a written

memorandum that was on United States Marine Corps letterhead that was addressed to him while

he was in the Marine Corps.   See Exhibit A.

Later that same day, at approximately 4:43 p.m., the defendant emailed his Facebook link to the complaining witness.   During the investigation, law enforcement reviewed the content of the defendant's Facebook page.   On May 5, 2019, at 5:55 p.m., a post was on the defendant's Facebook account that read:

> How does one gain access to the dark web?
>
> Google is useless… too heavily sanctioned for me to search for simple things such as; optics opposite of inferred.
>
> This is supposed to be a free market so finding specs on building UV optics shouldn't be difficult when the market for inferred optics is so vast.

In this Facebook post, the defendant may have been referring to building a device to enhance weapon capabilities.   On May 6, 2019, the following message was posted on the defendant's Facebook account:

> They are running from me.   I called Rebecca Snyder just now and she said to me that all of the concerns that I've presented to her were vague and unsubstantiated and does not warrant reopening my case!
>
> VAGUE?!   Are you deadass my nigga!   She hung up on me before I was actually able to threaten her.   She deserves to die, a long with everyone else responsible for my situation.   Clearly they have figured out how to avoid prison but I'm sure they can still be killed. This power they rely on sooo much doesn't grant immortality or invincibility lol. I'm done talking.   If I see someone come out of a government vehicle and into my apartment building, that person or people are now very likely to come under attack.   This is what I've been waiting for.
>
> The first person to call my bluff is the first martyr.   Nothing is taken seriously until someone dies.

That same day at approximately 3:03 p.m., the following message was posted on the

defendant's Facebook account:

> Lol last week I had 40 Friends now I'm down to 36.   It was 37 but
> I just deleted someone for never replying to my messages.
>
> So if you don't really care about me or my posts then just begone,
> I'm about to be homeless now so my rage and anger only increases
> from here.

Later that same day at approximately 3:45 p.m., the following post was on the defendant's

Facebook account:

> Lmfao come for me then!   Just keep in mind, I didn't strike first.
> Everything I'm doing is to protect myself.   Self defense is defense
> of self.   I'm not being defended by the DOD, I'm being attached.
> Time to strike back.   Doesn't seem like they're interested in justice
> to me so I guess this is just a vendetta.

A few minutes later, at 3:49 p.m., the following post was on the defendant's Facebook

account:

> This shit worries me everyday because these individuals know that
> I'm not going to let this go.
>
> They have already crossed the planet to keep these lies quiet and
> here I am home side, and they're still keeping it up.
>
> What's the point in leaving it to MY imagination to wonder how far
> these people will go to cover their ass. That is very dangerous. . . .

Later that evening, at approximately 8:13 p.m., the following message was posted on the

defendant's Facebook account:

> I promise you that won't make anyone an accessory but this is
> everyone's one and only chance to NOT be associated with me
> because I am going to hurt people.   It's not an "if" deal.   It's
> "when" type of thing.   So right now is your only chance to
> downgrade from friends to acquaintance or anything lesser.   Any
> from here on out, anyone who suggests I get over the past is a target
> to me.   You must be friend of Rebecca or Ashley or Alex or Brett
> or Andrew.   There's only a short 13 names on my kill list.   Don't

fuck around and end up as a bench warmer on my roster.

We believe that the complaining witness's first name, Rebecca, is the "Rebecca" listed in this post.

On May 9, 2019, the following message was posted on the defendant's Facebook account:

> None of my "threats" are true, I posted them here to give these
> dickheads the support the need to report me to the authorities.   And
> the did not.  Funny how one white girl says I touched her, I'm on
> jail in hours. One white But when it comes to me just trying to get
> my car back, all the white people tell me "no".   Like how did it even
> come to this?   All I ever really did was work and play my PS4.

Also on the defendant's Facebook account was a photograph that included the defendant who is dressed in military clothing.   <u>See</u> Exhibit B.

During the investigation, law enforcement obtained the telephone number that the defendant had used to call the complaining witness.   Investigations conducted at that time revealed that it was a cellular telephone with no subscriber information and that the service provider was Sprint.   With the assistance of the Metropolitan Police Department of the District of Columbia, on May 8, 2019, law enforcement began to track that cellular telephone number on an emergency basis.   Geolocation data revealed that during the week of May 6, 2019, that cellular telephone was in the Bronx, New York.

On May 10, 2019, the Honorable G. Michael Harvey of the United States District Court for the District of Columbia authorized the issuance of arrest warrant for the defendant and a Criminal Complaint that charged one count of Transmitting Threats in Interstate Commerce, in violation of 18 U.S.C. § 875(c).

On May 11, 2019, a special agent with the NCIS New York Field Office and other members of law enforcement went to an apartment in the Bronx, New York, where they believed the defendant resided, to execute the arrest warrant for him.   The defendant was not at home at that

time.   However, law enforcement spoke with two family members of the defendant who lived in the apartment and confirmed that the defendant lived there.

On May 13, 2019, law enforcement returned to the apartment where the defendant lived in the Bronx, New York, to execute the arrest warrant for him.   Law enforcement knocked on the apartment door and no one answered.   Law enforcement rang the doorbell.   The defendant opened a window to the outside walkway and could be seen by law enforcement.   The NCIS special agent previously had viewed a photograph of the defendant, observed him, and confirmed that it was the defendant. The NCIS special agent informed the defendant that they had a warrant for his arrest, asked whether he was Anthony Reid, and showed him a copy of the arrest warrant. The defendant confirmed his identity, said that he did not believe that the warrant was legitimate, and that he was not going to obey it.   Law enforcement again showed the defendant a copy of the arrest warrant.   The NCIS special agent heard someone putting heavy things down in front of the apartment's front door in what sounded like an effort to barricade the apartment front door to prevent entry.   Members of law enforcement continued to talk to the defendant who remained inside the apartment.   The defendant refused to open the apartment front door and was not cooperative.   After law enforcement made numerous attempts to have the defendant open the apartment door, due to safety concerns for one of the defendant's family members believed to have been inside the apartment at that time, law enforcement breached the apartment front door.   Upon entry into the apartment law enforcement confirmed that the defendant had barricaded the apartment front door.   The defendant was taken into custody and arrested.

While inside the apartment law enforcement conducted a security sweep and observed in

plain view in an opened bag in the defendant's bedroom what appeared to be an AR-15 type rifle with a collapsible stock.   On May 13, 2019, the Honorable Stewart D. Aaron of the United States District Court for the Southern District of New York authorized a search warrant for the apartment where the defendant lived in the Bronx, New York.   During the execution of the search warrant, law enforcement recovered several items, including the AR-15 type rifle with a collapsible stock that had what appeared to be an attached scope.   See Exhibit C.   No ammunition was recovered.

On May 13, 2019, the defendant had an initial appearance before Magistrate Judge Stewart D. Aaron in the United States District Court for the Southern District of New York, in United States v. Reid, case number 19-mj-04598.   The defendant waived the Identity Hearing and the Court entered an Order for Commitment to Another District for the United States Marshal to transport the defendant to the charging district, the United States District Court for the District of Columbia.

On May 22, 2019, an Indictment was filed in the United States District Court for the District of Columbia charging the defendant in Count One with Interstate Communications (transmission of threats in interstate commerce), in violation of 18 U.S.C. § 875(c), and in Count Two with Willfully Making a Threat, in violation of 18 U.S.C. § 844(e).   On June 5, 2019, the defendant had his initial appearance in the United States District Court for the District of Columbia before the Honorable Robin Meriweather.   At the initial appearance, the defendant was arraigned on the indictment and the government orally moved for the defendant to be held without bond pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) and 18 U.S.C. § 3142(f)(2)(A).   The Court set a detention hearing for June 10, 2019, at 1:45 p.m.

## II.   __LEGAL AUTHORITY__

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   The parties may proceed by way of proffer and hearsay is permitted.   Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the Government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F.Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.   Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

The indictment, standing alone, constitutes probable cause that the person charged committed the offense.   The Bail Reform Act Section 3142(e), which authorizes detention without bail pending trial, provides:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, such judicial officer *shall order* the detention of the person before trial.

18 U.S.C. § 3142(e) (emphasis added).   Factors that the Court must consider when determining whether there are release conditions that will reasonably assure a defendant's appearance as required and the safety of any person and the community are:   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug, (2) the weight of the evidence against the person, (3) the history and characteristics of the

person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.   18 U.S.C. § 3142(g).   A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ."   18 U.S.C. § 3142(e).   A judicial determination that a defendant should be detained pending trial on grounds of community safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); <u>see</u> <u>also</u> <u>United States v. Simpkins</u>, 826 F.2d 94, 96 (D.C. Cir. 1987); <u>United States v. Alatishe</u>, 768 F.2d 364, 370 (D.C. Cir. 1985).   The government must establish by a preponderance of the evidence that the defendant is a serious risk of flight and should be detained. <u>United States v. Xulam</u>, 84 F.3d 441, 442 (D.C. Cir. 1996).

18 U.S.C. § 875(c), Transmission of Threats in Interstate Commerce, provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c). 18 U.S.C. § 844(e), Willfully Making Threats, provides:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. § 844(e).

For the purposes of the Bail Reform Act ("BRA") and as applicable here, a crime of violence is defined as an "offense that has as an element the use, attempted use, or threatened use

of physical force against the person or property of another." <u>See</u> 18 U.S.C. § 3156(a)(4)(A) (utilizing the same definition found at 18 U.S.C. § 16(a)).   <u>Accord</u> <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1256 (2018) ("Section 16(a) covers offenses that have the use, attempted use, or threatened use of physical force "as an element.").

Under the Supreme Court's categorical approach to analyzing this question, a court compares the statute at issue with the relevant federal definition, examining only the statute's elements, not the actual facts underlying the crime. <u>Taylor v. United States</u>, 495 U.S. 575, 600 (1990); <u>United States v. Singleton</u>, 182 F. 3d 7, 10-11 (D.C. Cir. 1999) (holding that the categorical approach must be applied in analyzing whether the charged crime qualifies as a qualifying offense for the purposes of the BRA and identifying cases where other circuits have used it in analyzing § 16 outside of the sentencing context).   Where the statute at issue encompasses conduct that both does and does not meet the federal definition, then it is not a crime of violence.   <u>See</u> <u>United States v. Haight</u>, 892 F. 3d 1271, 1280 (D.C. Cir. 2018) (applying the categorical approach to determining whether a prior conviction is a "violent felony" for the purposes of the Armed Career Criminals Act ("ACCA") and noting that a violent felony will be found where, *inter alia*, the prior conviction, like under § 16(a), "has as an element the use, attempted use, or threatened use of physical force against the person of another.").   Where a statute is divisible, the analysis is performed only against the relevant divisible part of the statute ("the modified categorical approach"). <u>United States v. Sheffield</u>, 832 F. 3d 296, 314 (D.C. Cir. 2016).

A statute is divisible if it "list[s] potential offense elements in the alternative, [and thus] renders opaque which element played a part in the defendant's conviction." <u>Id</u>. (quoting <u>Descamps v. United States</u>, 570 U.S. 254 (2013)).   A statute that presents alternative elements may be subject

to the modified categorical approach.  Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).

That does not apply to a statute that enumerates various factual means of committing a single

element.  Id.  "'Elements are the 'constituent parts' of a crime's legal definition – the things the

'prosecution must prove to sustain a conviction.'"  Id. at 2248 (citation omitted).  Means are

"various factual ways of committing" a single element.  Id. at 2249.  If found to be a divisible

statute, a court then applies the categorical approach to that part of the challenged statute.

Descamps, 570 U.S. at 261-63.

In this case, 18 U.S.C. § 875(c) is divisible and the defendant is only charged in Count One

of the Indictment with threats to injure or kill.   Because the defendant is charged with two crimes,

only one of the charged statutes needs to be deemed a crime of violence to justify detention

pursuant to 18 U.S.C. § 3142(f)(1)(A).   Murder has been held to be a crime of violence.  See,

e.g., United States v. Williams, 946 F. Supp. 2d 112, 115 (D.D.C. May 24, 2013) (second degree

murder); United States v. Y.A., 42 F. Supp. 3d 63, 76 (D.D.C. Feb. 11, 2013) (first degree murder).

Furthermore, our Circuit Court has made clear that when determining if an element requires

"physical force," it does not matter whether that force is direct or indirect.   Haight, 892 F. 3d at

1280.   Based on the foregoing, 18 U.S.C. § 875(c) constitutes a crime of violence and therefore

gives rise to a basis for detention pursuant to 18 U.S.C. § 3142(f)(1)(A).

## II.    ARGUMENT

Based upon a review and weighing of the factors set forth in 18 U.S.C. § 3142(g), as set

forth below there is no condition or combination of conditions that would assure the safety of the

community.   Furthermore, there is a serious risk that the defendant will flee.  He has no

connections or ties to the Washington, D.C., metropolitan area, his home address on the Pretrial

Services Report is listed as "no fixed," and the defendant is facing serious charges.   Therefore, the defendant must be detained.   *See* 18 U.S.C. § 3142(e)(1).

### A.     Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged clearly weighs in favor of detention. Here, a grand jury found probable cause to believe that the defendant threatened to kill or injure the complaining witness.   The defendant used the telephone, electronic communications sent through his email account, and postings on his Facebook account to threaten to kill and injure the complaining witness.   In an email to the complaining witness that was sent on May 6, 2019, the defendant expressly said that was "going to hurt people.   It's not an "if" deal.   It's "when" type of thing.   So right now is your only chance to downgrade from friends to acquaintance or anything lesser.   Any from here on out, anyone who suggests I get over the past is a target to me.   You must be friend of Rebecca or Ashley or Alex or Brett or Andrew.   There's only a short 13 names on my kill list."   A post on May 6, 2019, to the defendant's Facebook account named the complaining witness by her first and last name and stated that "she deserves to die, along with everyone else responsible for my situation."   Based on the investigation conducted to date, the first names of the individuals on the defendant's kill list are all associated with the military and/or the defendant's Court Marshal proceedings.   The emails represent an escalation and progression in the defendant's statement and threatening language to the complaining witness that includes a threat to kill her.

Moreover, law enforcement recovered from the defendant's bedroom an AR-15 type rifle with what appears to be an attached scope.   Notwithstanding that no ammunition was recovered, arguably the defendant could have been preparing to gather the means to carry out his threat to kill

the complaining witness and others on his kill list.   Thus, the charged offenses are very serious and present a danger to the complaining witness and the community.

       **B.**     **<u>Weight of the Evidence Against the Defendant</u>**

       The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong.   The defendant sent electronic mail communications from his personal email account <u>amreid21@hotmail.com</u> and his name also appeared in his email address – "Anthony Reid."   In some of his emails that he sent to the complaining witness, the content of his emails referenced the defendant's Court Marshal proceedings.   One email included his prior military email account and copied his personal email account.   The defendant also inserted in one email a memorandum on United States Marine Corps letterhead that was sent to him with his identifying information.   Additionally, the defendant's Facebook account has his name Anthony Reid.   In one post on his Facebook account, the defendant is pictured in a photograph wearing military clothing.   Specific posts on the defendant's Facebook account list the complaining witness by her first and last name, and the content of some of his Facebook posts mirror the emails that the defendant had sent to the complaining witness. Finally, the defendant expressly stated that the complaining witness deserved to die and listed her first name with other people that he identified as being on his kill list.

       **C.**     **<u>The defendant's History and Characteristics</u>**

       The third factor, the history and characteristics of the defendant, similarly weigh in favor of detention.   The defendant has two prior convictions for assaultive conduct.   The defendant was convicted under the Uniformed Code of Military Justice for Assault by Battery on May 19, 2017,

and Disorderly Conduct on March 30, 2016.   The defendant's Assault by Battery conviction involved allegations that he sexually assaulted/raped the victim.   The defendant's Disorderly Conduct conviction involved the defendant assaulting another member of the military.

### D.      **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offenses involve the defendant's threat to kill the complaining witness.   There is also an indication that the defendant had developed a kill list with several names.   The defendant had the primary means to commit the crimes – an AR-15 type assault rifle with an apparent attached scope.   Clearly the defendant poses a danger to the community because arguably he was gathering the tools he needed to carry out his threats to kill and/or injure the complaining witness and perhaps others.   The defendant presents a danger to the community and others, and the only way to protect them is for the defendant to be detained.

### E.      **Risk of Flight**

Upon information and belief at this time, the defendant does not appear to have any ties or connections to the District of Columbia or greater metropolitan area.   When the defendant was arrested, he was residing at an apartment in the Bronx, New York, with other family members, where he apparently may have lived when he enlisted in the military.   The Pretrial Services Agency report lists the defendant's address as "no fixed."   The defendant has no incentive to remain in District of Columbia.   There is a serious risk that should he be released, he will flee and not return to court.

### III.     **CONCLUSION**

18

The government reserves the right, and will make, further arguments at the detention hearing.   The government respectfully requests this Court to find, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community.   There also is a serious risk that the defendant will flee.   The government respectfully requests that this Court detain the defendant pending trial.   The government also requests that a stay away and no contact order be entered to prevent the defendant from having any contact, by and through any means, including third parties, with the complaining witness.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472-845

By:   _____/s/_____

Karla-Dee Clark
D.C. Bar No. 435-782
Assistant United States Attorney
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 252-7740
Karla-Dee.Clark@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Gregory English, Esq., at gbeuva@gmail.com and to the court electronic mail address for the Honorable Robin Meriweather on this 8th day of June, 2019.[1]


_____/s/_____
Karla-Dee Clark
Assistant United States Attorney

---

[1]     On June 8, 2019, this case was sealed on the Court's Electronic Case Filing system under criminal case number 19-cr-172 and magistrate number 19-MJ-123.