# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY M. REID,<br><br>          Defendant. | )<br>)<br>)<br>) Criminal Case No.: 19-00172 (TFH/RMM)<br>)<br>)<br>)<br>)<br>) |

## DETENTION MEMORANDUM

This matter comes before the Court on a motion by the United States requesting that Defendant Anthony Reid be detained pending trial. Mr. Reid has been charged by Indictment with one count of Willfully Making a Threat, in violation of 18 U.S.C. § 844(e), and one count of Issuing a Threat through Interstate Communications, in violation of 18 U.S.C. 875(c). The United States requested a detention hearing pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A). The undersigned held a detention hearing on June 10, 2019 and concluded that Mr. Reid should be held without bond pending trial. This memorandum fulfills the Bail Reform Act's requirement that a pretrial detention order "include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011).

## Statutory Basis for Detention Hearing

The United States moved for a Detention Hearing on the basis that the case involves a crime of violence, pursuant to 18 U.S.C. § 3142(f)(1)(A) and proffered that Mr. Reid posed a flight risk, pursuant to 18 U.S.C. § 3142(f)(2)(A).

**Findings of Fact**

At the detention hearing, the United States proceeded by proffer based on its Memorandum in Support of Pretrial Detention. *See* Gov't's Mem. in Supp. of Pretrial Detention, ECF No. 7. Having considered the United States' written and oral proffer, Mr. Reid's oral arguments, and the Pretrial Services Agency's recommendation, the Court makes the following findings of fact.

On May 19, 2017, Mr. Reid, a former Marine, pled guilty to an Assault by Battery, in violation of the Uniformed Code of Military Justice, for sexually assaulting a female Marine. He was discharged and sentenced to ninety days of confinement with a fine.

Nearly two years later, Mr. Reid began a series of phone calls to the complaining witness at her job at the U.S. Navy's Office of the Judge Advocate General in Washington D.C. On January 28, 2019, Mr. Reid called the complaining witness about his appeal, and then called again, stating that he would file a complaint and "bring down the system." On May 6, 2019, Mr. Reid called the complaining witness again, asserting that he was furious and that he had been framed for his prior conviction. He insisted that she provide the Secretary of the Navy's contact information and grew upset that she could not readily provide it. Ultimately, the complaining witness hung up because the conversation was unproductive. Later that same day, Mr. Reid called her again, saying, "I am coming after you," and "You are going to pay for what you did." He also stated that the first law enforcement agent to approach him would become a martyr. Mr. Reid proceeded to call the complaining witness four additional times that day, but she did not answer when she recognized his phone number. Mr. Reid did leave a voice recording, stating, " . . . go ahead, go ahead and report those threats that I communicated . . ."

That same day, Mr. Reid sent several emails to the complaining witness's work email address.  The emails demanded the personal contact information of the complaining witness's supervisor, to which she replied with her supervisor's name and copied her supervisor on the message.  In response, Mr. Reid expressed frustration with her delayed reply and stated, "Also could you go ahead a forward your complaints to the appropriate authority. [sic]  You did communicate to me on the phone that you feel threatened by me.  And you should.  You have served beyond your usefulness lol."  Minutes later, he sent another email, expressing frustration that the complaining witness's supervisor was ranked lower than a General.  He concluded the email by stating a list of omens that he wished upon her, including getting hit by a car, spilling coffee on herself, stepping in fecal matter, and suffering "worse than I have."  He also stated, "I hope you don't take this seriously like you don't take your responsibilities and obligations seriously.  I hope you have a nice day.  And I also hope someone fucks it up lol."

About an hour later, Mr. Reid sent another email that contained a screenshot of the complaining witness's office internet home page and, circled in red, highlighted the specific division at which she worked.  Within another hour, he replied, "So how do you feel about my language now?  Is it threatening yet?  Do you feel threatened by me?  Are you feeling unsafe lol?  Do you feel secure in your little standard issue office?"

Around 4:53 PM,  Mr. Reid sent another email, "Do you like being able to breathe? Do you like being able to live? . . . I'm going to fuck that all up lmao!  You all better act fast because I promise you that this will not be an issue in my life before 2020 gets here . . . One way or another, I will eliminate you all from my life . . ."  Mr. Reid also sent a link to his personal Facebook account, which contained posts requesting advice on how to access the dark web and how to find specs on building ultraviolet optics.   On his Facebook page, Mr. Reid posted a series

of back-to-back comments stating that the complaining witness deserved to die and threatening to attack any government officials who approached him.  At 8:13 PM, Mr. Reid threatened, ". . . I am going to hurt people.  It's not an 'if' deal.  It's 'when' type of thing . . . There's only a short 13 names on my kill list."  Days later, Mr. Reid posted, "None of my 'threats' are true.  I posted them here to give these [people] the support they need to report me to the authorities."

Law enforcement was able to track the phone number that Mr. Reid had used to contact the complaining witness and used geolocation data to connect the cell phone to the Bronx, New York.  On May 11, 2019, an NCIS special agent went to a residence where law enforcement believed Mr. Reid lived.  Although he was not home at the time, family members at the apartment confirmed that Mr. Reid lived there.  On May 13, 2019, law enforcement returned to execute an arrest warrant; however, Mr. Reid refused to open the door and barricaded himself inside.  Eventually, law enforcement breached the front door and arrested Mr. Reid.  While inside, officers saw an AR-15 type rifle with a collapsible stock in plain view.  Later that day, law enforcement returned to execute a search warrant and recovered the AR-15 type rife with a collapsible stock.  They did not recover any ammunition.

## Legal Standard

"In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, articulates the circumstances that trigger that exception.  Specifically, it authorizes a judicial officer to order the detention of a defendant before trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

A finding that a defendant poses a danger to the community, or that there is a serious risk that the defendant will flee, provides an adequate basis to order pretrial detention. *See Salerno*, 481 U.S. at 755; *United States v. Lee*, 195 F. Supp. 3d 120, 124 (D.D.C. 2016); *United States v. Henry*, 935 F. Supp. 24, 25 (D.D.C. 1996). A detention decision based upon the defendant's dangerousness to the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). In contrast, a detention decision based upon a finding that no set of conditions will reasonably assure the defendant's appearance in court "need only be supported by a 'preponderance of the evidence.'" *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (quoting *United States v. Vortis*, 785 F.2d 327, 329 (D.C. Cir. 1986)); *see United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Anderson*, 382 F. Supp. 2d 13, 14 (D.D.C. 2005).

The Bail Reform Act directs judges to consider four factors in determining whether any conditions of release will reasonably assure a defendant's future presence in court or assure the safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *Xulam*, 84 F.3d at 442. The court must consider the available information pertaining to all four factors, even if the parties' arguments do not address each factor. *See* 18 U.S.C. § 3142(g); *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 117 (D.D.C. 2013).

## Discussion

The United States sought detention based on Mr. Reid's dangerousness and risk of flight. The Court's analysis is guided by the four factors set forth in Section 3142(g) of the Bail Reform

Act. *See United States v. Little*, 235 F. Supp. 3d 272, 277–78 (D.D.C. 2017); *United States v. Muschetta*, 118 F. Supp. 3d 340, 343–44 (D.D.C. 2015). After weighing the statutory factors, the Court concludes that there are no release conditions that would reasonably assure the safety of the community if Mr. Reid were released. Therefore, pretrial detention is appropriate. The Court will not reach the merits of the United States's risk of flight argument because the danger to the community provides an independent basis for pretrial detention.

The first factor, the nature and circumstances of the offense, favors detention. The Bail Reform Act directs the Court to consider, as part of its analysis of this factor, whether the charged offense involves a crime of violence. *See* 18 U.S.C. § 3142(g)(1). Mr. Reid communicated a series of escalating threats over the course of four days through direct phone calls, email communications, and public social media posts. Mr. Reid's threats were continuous and included a "kill list" of people he sought to harm. Mr. Reid emphasized the seriousness of his threats, stating that it was not a matter of *if* he would kill the individuals, but *when* he would do so. He also threatened to "attack" any government official who sought to confront him. Mr. Reid's oral and written threats indicate that he is dangerous and has dangerous plans to harm others. As such, the nature and circumstances weigh in favor of detention.

The second factor, the weight of the evidence, also favors detention. Strong evidence exists in this matter. Law enforcement validated that the messages sent from a Hotmail email account to the complaining witness's work email belonged to Mr. Reid. Although the threatening phone calls were not recorded, the complaining witness provided details regarding the calls. In addition, Mr. Reid sent his personal Facebook account link through email. Mr. Reid's Facebook account contained photos of himself dressed in his military uniform, and his Facebook posts confirmed that he had spoken with the complaining witness via phone and issued

6

threats toward her.  Finally, both Mr. Reid's Facebook and email accounts archive Mr. Reid's threatening language, including a kill list and threats to attack law enforcement.  Accordingly, the evidence is strong, and this factor weighs in favor of pretrial detention.

The third factor, which considers a defendant's history and characteristics, slightly favors detention.  Foremost, Mr. Reid is a U.S. veteran.  He lacks a civilian criminal history, does not have a record of failing to appear in court, and has no Bail Reform Act violations.  Though the United States emphasizes that law enforcement recovered an AK 15 type firearm from Mr. Reid's apartment, Mr. Reid states that it was a BB gun.  Mr. Reid does have two prior court martial criminal convictions for  Disorderly Conduct and Assault by Battery charges.  Mr. Reid's counsel argues that the Disorderly Conduct charge would be considered a misdemeanor and would not count against Mr. Reid under the sentencing guidelines.  The government argues that the Assault by Battery charge indicates his dangerousness.  Although Mr. Reid does not have an extensive criminal history, the recovery of a weapon in his home paired with his military criminal record cause this factor to slightly favor pretrial detention.

Finally, the fourth factor, which considers the nature and seriousness of any danger to the community, favors detention.  There is a danger that Mr. Reid would continue to make threats or act on such threats.  The Court has considered Mr. Reid's contention that any risk of dangerousness would be mitigated by allowing Mr. Reid to be released and monitored from his family residence in the Bronx, New York.  First, Pretrial Services was unable to verify his family residence, making him ineligible for the High Intensity Supervision Program.  Further, given that Mr. Reid would be released in Washington D.C. where the complaining witness works, and given that Mr. Reid was residing in the Bronx, NY with his family while issuing threats, there are not release conditions that would  adequately mitigate any risk of danger to the community.

In sum, no conditions would reasonably assure the safety of the community if Mr. Reid were released. The Court need not reach the merits of the government's risk of flight claims.

## **Conclusion**

For the foregoing reasons the Court finds that the United States has met its burden in showing, by clear and convincing evidence, that pretrial detention is warranted because Mr. Reid presents a danger to the community. Having reviewed and weighed the proffered evidence and the factors set forth in 18 U.S.C. § 3142(g), and considered all less restrictive alternatives to pretrial detention, this Court concludes that no condition nor combination of conditions would reasonably ensure the safety of the community if Mr. Reid were released. Therefore, the Court GRANTS the United States' motion for detention without bond.

It is further ORDERED that (1) Mr. Reid shall stay away from the complaining witness, (2) Mr. Reid shall not have direct or indirect contact through any means (including email or telephone communications) with the complaining witness; and (3) Mr. Reid shall not have direct or indirect contact through any means (including email or telephone communications) with any government witnesses involved with his prior Assault by Battery charge, or with any JAG employees at the U.S. Navy Yard in Washington D.C., with the exception of communications that Mr. Reid may need to initiate or continue in order to obtain legal assistance or pursue his appeal of any decisions made through the military justice system.

Dated:   June 14, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE